IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**ROBERT DEWAYNE BARNES**                                                    **PLAINTIFF**

**v.**                                             **CIVIL ACTION NO. 1:13-cv-529-KS-MTP**

**DR. RONALD WOODALL**                                                       **DEFENDANT**

## OPINION AND ORDER

THIS MATTER is before the Court on Defendant Dr. Ronald Woodall's Motion for Summary Judgment [38]. Having considered the Motion [38], record, and applicable law, the Court finds that the Motion [38] should be granted and this case should be dismissed with prejudice.

## BACKGROUND

On May 16, 2013, Plaintiff Robert Dewayne Barnes, proceeding *pro se* and *in forma pauperis*, filed his complaint pursuant to 42 U.S.C. § 1983. The allegations in Plaintiff's complaint occurred while he was a post-conviction inmate at South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi. In his complaint and as clarified in his testimony at the *Spears*[1] hearing, Plaintiff asserts claims against Dr. Ronald Woodall.[2]

Plaintiff claims that Defendant denied him adequate medical treatment for his injured finger. According to Plaintiff, on September 10, 2012, he broke his right ring finger playing basketball. Later that day, the medical staff at SMCI provided Plaintiff a wrap, splint, and

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[2] In his complaint, Plaintiff also asserted claims against Dr. Robert C. Dews and Gloria Perry. However, the Court dismissed Plaintiff's claim against Dr. Dews, and Plaintiff voluntarily dismissed his claim against Gloria Perry. *See* Order [22]; Omnibus Order [34].

1

ibuprofen, which Plaintiff alleges did not adequately relieve his pain.  Two days later, Nurse Practitioner Woodland[3] radiographed Plaintiff's finger and found a break.  SMCI staff allegedly informed the medical director, Gloria Perry, that Plaintiff would need to see a specialist.  An appointment was made for Plaintiff to see a specialist at Southern Bone and Joint Specialists, P.A.  Plaintiff allegedly was not placed on a treatment schedule or wound care list at that time.  Plaintiff, however, requested medical treatment, and medical staff provided treatment.  Plaintiff claims that he should not have had to request treatment.

On October 1, 2012, Plaintiff allegedly saw an orthopedist, who took a radiograph of the finger and confirmed that it was broken.  The orthopedist "buddy taped" Plaintiff's fingers and instructed him to keep tape on his fingers, continue to move them, and return in three weeks.  The orthopedist also prescribed a pain reliever, Ultram, which Plaintiff allegedly did not receive after he returned to SMCI.

Thereafter, Plaintiff allegedly was not placed on a treatment schedule or wound care list.  According to Plaintiff, he was not taken back to see the orthopedist three weeks later.  Instead, he was taken to see him six weeks later.  In the interim, Plaintiff submitted several sick calls requesting to see the orthopedist.  During that time, Plaintiff also met with Defendant, who informed Plaintiff that his finger had healed.  At the second appointment with the orthopedist in November, 2012, the orthopedist also informed Plaintiff that the broken finger had healed.

Plaintiff claims that his finger has healed incorrectly, and that Defendant should have seen to it that Plaintiff's injured finger was treated properly and in a timely manner.  Plaintiff

---

[3] At the *Spears* hearing, Plaintiff referred to Woodland as a doctor, but Plaintiff's medical records show that Woodland is actually a nurse practitioner.

2

seeks injunctive relief in the form of an order requiring Defendant to fix his finger.  Plaintiff also seeks compensatory damages in the amount of $100,000.

## STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment will be granted only when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  The Court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).  In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## ANALYSIS

Plaintiff's allegations amount to a claim against Defendant for a violation of the Eighth Amendment.  "Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d

752, 756 (5th Cir. 2001)).  The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A plaintiff must show that a defendant's "response indicate[d] that the [defendant] subjectively intended that harm occur." *Thompson v. Upshur County*, 245 F.3d 447, 458-59 (5th Cir. 2001).

An official is not deliberately indifferent unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id*. at 838.  Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 Fed. App'x at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm."  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986).  Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006).  Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

In support of his Motion for Summary Judgment [38], Defendant submitted an affidavit, a transcript of the *Spears* hearing, and Plaintiff's medical records.  Plaintiff's medical records demonstrate that on September 10, 2012, the day he injured his finger, the medical staff at SMCI

4

splinted and wrapped his finger and provided ibuprofen. *See* Medical Records [41] at 110. Two days later, Nurse Practitioner Woodland took radiographs, provided additional pain medications, and requested an orthopedic consultation. [41] at 111-16; Dr. Woodall Affidavit [38-2] at 1. Defendant approved the orthopedic consultation request, which was submitted to MDOC. [41] at 116; [38-2] at 1-2. Throughout September, medical professionals at SMCI continued to treat Plaintiff's finger. [41] at 119.

On October 1, 2012, Plaintiff saw an orthopedist, who determined that Plaintiff had a fracture, recommended "buddy-taping" the finger, and encouraged Plaintiff to begin range of motion exercises. [41] at 19-21. The orthopedist also prescribed Ultram and instructed Plaintiff to return in three weeks. [41] at 17, 20. After Plaintiff returned to SMCI, Plaintiff was provided ibuprofen, not Ultram, because Plaintiff "would need to be placed in the infirmary to receive this medication and he refuses to be housed there at this time." [41] at 125.

Defendant first examined Plaintiff regarding his injured finger on November 15, 2012. At that time, Defendant sent a reminder to the MDOC Office of Medical Compliance regarding Plaintiff's follow-up visit with the orthopedist. [41] at 135; [38-2] at 2-3. According to Defendant, however, he did "not have the authority to schedule or arrange for transportation and security for offsite follow-up visits." [38-2] at 2. Defendant states that MDOC is responsible for arranging offsite visits. [38-2] at 2.

On November 26, 2012, Plaintiff again saw the orthopedist who found that his finger had healed. [41] at 27. The orthopedist noted that Plaintiff was unhappy with the result and instructed Plaintiff on range motion exercises. [41] at 27. The orthopedist, however, did not recommend any other treatment or medical procedures.

The record demonstrates the Plaintiff was provided regular medical treatment from Defendant and other medical professionals at SMCI. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (holding that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegation of deliberate indifference."). Plaintiff complains that he had to ask for such treatment but admits that treatment was provided when he requested it. Plaintiff complains about the medications he was provided, but mere disagreement with a course of medical treatment does not constitute deliberate indifference. *See Norton*, 122 F.3d at 292; *Gonzales v. Isbell*, 456 Fed. App'x. 466, 467 (5th Cir. 2012) (finding that "claim regarding the ineffectiveness of [plaintiff's] pain medication exhibits merely a disagreement about his medical treatment"). Additionally, Plaintiff's refusal to be housed in the infirmary prevented him from receiving one of his prescribed medications.

Plaintiff complains of a delay in the arrangement of his follow-up appointment with the orthopedist, but Plaintiff has failed to establish that Defendant was responsible for any such delay. According to Defendant's sworn testimony, he did not have the authority to arrange Plaintiff's follow-up appointment. Plaintiff has not presented evidence which rebuts this testimony, and the record supports Defendant's testimony as it shows that Defendant sent MDOC officials a *reminder* regarding the appointment. Furthermore, Plaintiff has failed to establish that the delay caused him substantial harm. *See Mendoza*, 989 F.2d at 195. At the follow-up appointment, the orthopedist found that the finger had healed, and the only treatment he recommended was range of motion exercises.

The record also demonstrates that Plaintiff primarily received care from medical professionals other than Defendant Woodall, and it is well-settled that Section 1983 does not

"create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Defendant Woodall had limited contact with Plaintiff, and Plaintiff has failed to demonstrate that Woodall was personally involved in any denial of adequate medical care. Accordingly, Plaintiff has failed to show that Defendant was deliberately indifferent to any serious medical need, and Defendant is entitled to summary judgment.

IT IS, THEREFORE, ORDERED that:

1. Defendant's Motion for Summary Judgment [38] is GRANTED and this action shall be dismissed with prejudice.

2. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED, this the 19th day of March, 2015.

s/ Michael T. Parker
United States Magistrate Judge